AE R. HONG, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; KUN KIM, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hong v. Commissioner
Docket Nos. 36037-87, 36506-87, 28321-88, 28322-88
United States Tax Court
T.C. Memo 1992-58; 1992 Tax Ct. Memo LEXIS 63; 63 T.C.M. (CCH) 1959; T.C.M. (RIA) 92058; January 30, 1992, Filed *63 Decisions will be entered under Rule 155 in docket Nos. 36506-87 and 28322-88. Decisions will be entered for petitioner in docket Nos. 36037-87 and 28321-88. Ronald K. Van Wert, for petitioners. Patrick E. McGinnis and Thomas J. Travers, for respondent. SWIFT, Judge. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: Ae R. Hong, Docket Nos. 36037-87 and 28321-88
Additions to Tax
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
6653(b)(1)
1984
$ 399,873
$   --   $ 20,104
[1]
$ 201,039
1985
413,097
103,274
20,655
[1]
206,549
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)(1)
6653(a)(1)(A)
6653(a)(1)(B)
6653(b)(1)(A)
1986
$ 413,107
$ 103,277
$ 20,655
[1]
$ 206,549
Sec.
Sec. Year
6653(b)(2)
6661
1984
[2]
$  99,968
1985
[2]
103,274
Sec.
Sec.
Year
6653(b)(1)(B)
6661
1986
[2]
$ 103,274
*64 Kun Kim, Docket Nos. 36506-87 and 28322-88
Additions to Tax
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
6653(b)(1)
1984
$ 399,873
$  --   $ 20,104
[1]
$ 201,039
1985
413,097
103,274
20,655
[1]
206,549
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)(1)
6653(a)(1)(A)
6653(a)(1)(B)
6653(b)(1)(A)
1986
$ 413,107
$ 103,277
$ 20,655
[1]
$ 206,549
Sec.
Sec. Year
6653(b)(2)
6661
1984
[2]
$  99,968
1985
[2]
103,274
Sec.
Sec.
Year
6653(b)(1)(B)
6661
1986
[2]
$ 103,274
Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The primary issues for decision in these consolidated cases are: (1) Whether petitioner *65 Mr. Kun Kim (Kim) earned additional income from the operation of a Korean massage parlor which he failed to report as income, and (2) whether Kim is liable for fraud or, in the alternative, negligence additions to tax. Respondent at trial conceded the tax deficiencies and additions to tax determined against petitioner Ms. Ae R. Hong (Hong). One remaining issue relating to Hong, however, relates to ownership of $ 193,000 seized by respondent from a safety deposit box, and (if it is determined Hong owned the $ 193,000) whether this Court has jurisdiction to order respondent to refund the $ 193,000 to Hong. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners resided in Costa Mesa, California, when they filed their petitions in these consolidated cases. Kim was born in Seoul, Korea, in 1945. In Korea in 1970, Kim married Hong. Kim and Hong have three children. In Korea in 1978, Kim and Hong were divorced. In 1980, Kim moved to the United States, and in 1982 Kim married Michelle Ferris. In 1982, Kim separated from Ms. Ferris, and they apparently divorced. In Korea in 1983, Hong married Mark Choi, but they divorced in 1985. Apparently in 1984, *66 Hong moved to the United States. On March 1, 1984, Kim and Hong purchased a home as joint tenants in Costa Mesa, California. Kim and Hong both lived in this home from July of 1985 through the date of trial. In 1985, Kim transferred to Hong his joint tenancy interest in this home. On July 1, 1985, $ 232,900 in cash and traveler's checks was deposited into a bank account maintained in Hong's name at the First State Bank of Southern California (First State Bank) in Garden Grove, California. On the following dates, additional cash deposits, each in the amount of $ 9,900, were made into the bank account at the First State Bank: July 2, 3, 5, 8, 9, 10, 11, 12, 16, 17, 18, 19, and 23, 1985. During 1984, 1985, and 1986, Kim owned and operated in Newport Beach, California, the Oriental Shiatsu & Spa (the Spa), a Korean massage parlor. Most customers of the Spa purchased half-hour massages for $ 30. The Spa generally was open 14 hours a day for 7 days a week, and it was closed for approximately 30 days a year. The Spa had two customer entrances, a front door and a back door. Customers of the Spa customarily paid for services in cash. For personal purposes, Kim often withdrew cash *67 from the cash register of the Spa before making deposits of the remaining cash into the bank account maintained by Kim with respect to the business of the Spa. No record of the amount of Kim's withdrawals from the cash receipts of the Spa was maintained by Kim. Ordinances of Newport Beach, California, require massage parlors to maintain records with respect to customers visiting the massage parlors. Kim did maintain some limited records during the years in issue with respect to the customers of the Spa, but the records that were maintained by Kim have been lost. On audit, respondent conducted a surveillance of the Spa in an effort to estimate the number of customers visiting the Spa. The following schedule summarizes the results of the surveillance by respondent's agents: Length of
Individuals
Individuals
Date
Surveillance
Observed
Per Hour
Jan. 1987
1     hr. 3
3
Jan. 1987
3     hrs.
10
3
May 6, 1987
9 1/2 hrs.
37
4
May 11, 1987
9 1/4 hrs.
32
4
May 14, 1987
3     hrs.
22
7
Officers of the Huntington Beach Police Department also conducted a surveillance of the Spa and observed an average of 2 to 3 individuals per hour visiting the Spa. *68 Respondent treated each of the individuals observed entering the Spa as a customer of the Spa. During 1985 and 1986, Hong owned and operated the Mikado Restaurant in Garden Grove, California. The restaurant never made a profit. Although not married in 1984, Kim and Hong filed a timely joint Federal income tax return for 1984. After being contacted by respondent's agents in May of 1987, Kim and Hong filed untimely separate individual Federal income tax returns for 1985 and 1986. On the above tax returns, Kim reported the following gross receipts and net profits in connection with the operation of the Spa: Reported
Reported
Year
Gross Receipts
Net Profits
1984
$  71,273
$ 19,182
1985
$ 141,999
$ 47,935
1986
$ 163,393
$ 47,437
To enable his accountant to determine the gross receipts and income of the Spa and to prepare his Federal income tax returns, Kim gave his accountant bank records pertaining to the operation of the Spa, but Kim did not inform the accountant of the fact or amount of the withdrawals Kim made from the cash receipts of the Spa before making deposits into the bank account maintained with respect to the Spa. As a result of his audit and surveillance *69 activities, respondent determined that Kim had additional gross receipts from the Spa that were not reported by Kim on the above tax returns for each year in issue, as follows: Year
Additional Gross Receipts
1984
$ 1,416,727
1985
$ 1,488,000
1986
$ 1,488,000
Respondent's determination of the total gross receipts of the Spa was based on an average of 3 customers per hour, 14-hour days or 42 customers per day, for 350 days per year (365 days less 15 days for holidays), at $ 100 per massage. Respondent's $ 100 per-massage figure was based on a sign one of respondent's agents alleges he saw in the Spa indicating a fee of $ 100 per hour. Respondent subtracted from the total gross receipts calculated for each year under the above formula 40 percent, or $ 595,000, as payments to the masseuses and $ 50,000 for other operating costs, and respondent calculated Kim's net income from the Spa at $ 828,495 for 1984 and at $ 843,000 for each of 1985 and 1986. Respondent's determination of the tax deficiencies against Hong were duplicative of the tax deficiencies determined against Kim and apparently were based on respondent's understanding that Kim and Hong were married during the *70 years in issue and that Hong was jointly liable, under California's community property law, for the tax liabilities relating to the income of the Spa. Respondent also determined that Kim and Hong fraudulently attempted to evade their Federal income tax liabilities for 1984, 1985, and 1986, and respondent determined against Kim and Hong additions to tax under sections 6653(b) and 6661. Alternatively, respondent determined additions to tax against Kim and Hong under section 6653(a) for 1984, 1985, and 1986, and section 6651(a)(1) for 1985 and 1986. On or about July 21, 1987, respondent made jeopardy assessments against Kim and Hong with respect to the Federal income tax deficiencies determined against Kim and Hong for 1985 and 1986. Pursuant to the jeopardy assessments, respondent, among other things, seized and closed the Spa, seized the assets and limited records of the Spa that were located at the Spa, seized and closed Hong's Mikado Restaurant, levied on Hong's residence, and levied on and seized the contents of a safety deposit box (namely, $ 193,000 in cash) maintained at the First State Bank. Both Kim and Hong were authorized to enter this safety deposit box. The $ 193,000 *71 seized from the safety deposit box consisted largely of $ 20, $ 50, and $ 100 bills. The bills were wrapped tightly in green tape in 18 separate bundles. The $ 193,000 seized from the safety deposit box was applied by respondent against Kim's tax liability assessed under the jeopardy assessment made against Kim. Before trial in these consolidated cases, respondent conceded in full the tax deficiencies and additions to tax determined against Hong, and respondent released the levies on Hong's residence and on the Mikado Restaurant that were made against Hong pursuant to the jeopardy assessment. Respondent, however, has refused to return to Hong the $ 193,000 seized from the safety deposit box on the ground that the $ 193,000 belonged to Kim. Analysis of the facts of this case is made particularly difficult by the fact that neither party chose to call as witnesses any of the customers of the Spa (the apparent identity of some of whom was available from automobile license plates noted during the surveillances). OPINION Income of the Spa
Petitioners argue that respondent's determination of Kim's tax liability for the years in issue was arbitrary and capricious, that it constituted *72 a naked determination or assessment without any factual support, and that the burden of going forward concerning Kim's correct tax liability should be shifted to respondent. , revg. . Respondent's determination of Kim's taxable income for the years in issue was not arbitrary and capricious, and it did not constitute a naked determination or assessment. Respondent's estimates of the average number of customers per hour visiting the Spa and of the average fees per customer were not arbitrary. They were based on substantial information gathered through surveillances and other activities. , is not applicable to the facts of this case, and the burden of going forward as well as the burden of proof with regard to Kim's correct tax liability remains with Kim. The evidence before us establishes that Kim's Spa earned substantially more fees than were reported each year on Kim's Federal income tax returns. Based on our evaluation of the evidence, we conclude that Kim's Spa received in each of 1984, 1985, and 1986, $ *73 422,100 in gross receipts, calculated as follows: an average of 3 customers per hour, for approximately 14 hours per day (or 42 customers per day), for 335 days each year at an average fee of $ 30 per customer. Applying respondent's 40-percent expense factor for amounts paid to the masseuses and for other expenses, this formula produces total net receipts for each year of $ 253,260. Respondent argues that his determination of much larger gross receipts for the Spa than we have found herein is supported by certain actions of the customers of the Spa (namely, before entering the Spa, some of the customers allegedly would look around furtively and some would take off their wedding rings), which actions respondent argues are suggestive of prostitution activity at the Spa (from which activity the Spa allegedly would have received fees in addition to those charged for mere massages). Respondent also notes that female employees of the Spa were observed wearing skimpy, provocative clothing. Respondent notes further the large amount of cash found in the safety deposit box and argues that the source thereof could only have been the operation of Kim's Spa. The evidence, however, concerning *74 fees or receipts the Spa received from prostitution activity is particularly weak, and such general allegations cannot serve as a basis for sustaining in full respondent's determination of the Spa's gross receipts. Additions to Tax
The issue of fraud presents a question of fact that must be decided on the basis of an examination of all of the evidence in the record. , affg. . The burden of proof regarding the fraud additions to tax is on respondent to prove by clear and convincing evidence that Kim underpaid his taxes during each of the years in issue and that some part of that underpayment was due to fraud. . Fraud may be proved by circumstantial evidence and reasonable inferences may be drawn from the record because direct proof of intent is rarely available. ; . Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owed, effectuated *75 by conduct designed to conceal, mislead, or otherwise prevent the collection of such taxes. . A pattern of consistent underreporting of income is a strong indication of fraud, as is the failure to maintain adequate records. ; , affg. ; . The facts before us show that Kim intentionally underpaid his Federal income tax liabilities. Kim's Spa dealt primarily in cash. No records were maintained by Kim of the amount of cash he withdrew from the receipts of the Spa for personal purposes. To prepare his Federal income tax returns and to determine total receipts of the Spa, Kim gave his accountant only information with respect to the cash deposited into the Spa's bank account, which did not reflect the total receipts of the Spa. A pattern of substantial underreporting occurred on Kim's Federal income tax returns and that is a strong indication of fraud. The schedule *76 below reflects the Spa's gross receipts as reported on Kim's Federal income tax returns and as found herein: Reported Gross
Corrected Gross
Year
Receipts
Receipts
1984
$  71,273
$ 422,100
1985
$ 141,999
$ 422,100
1986
$ 163,393
$ 422,100
We sustain respondent's determination of the additions to tax for fraud for each year in issue. $ 193,000 Seized From Safety Deposit Box
Hong argues that the $ 193,000 in cash seized by respondent from the safety deposit box pursuant to respondent's jeopardy assessment was owned by Hong and that it represents an overpayment of Hong's tax liability. Hong asks the Court to order a refund to her of this $ 193,000. Under section 6512(b)(1), this Court has jurisdiction to determine whether there has been an overpayment and the amount thereof, and section 6512(b)(2) (as amended by the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, sec. 6244, 102 Stat. 3342, 3750) gives this Court jurisdiction to order the refund of any overpayment so determined. The $ 193,000 seized by respondent from the safety deposit box was applied to Kim's tax liability determined under the jeopardy assessment against Kim. The evidence *77 before us does not establish that the $ 193,000 seized by respondent was Hong's and not Kim's. Kim was authorized to enter the safety deposit box. Kim had access to large amounts of cash that he has not accounted for. Evidence was admitted that suggested the $ 193,000 might belong to Hong and that Hong received the $ 193,000 from an inheritance upon the death of her mother in Korea and from a private lending business Hong allegedly operated. We, however, are not persuaded, and we conclude that the $ 193,000 was properly treated as belonging to Kim, seized by respondent, and applied to Kim's tax liability. Hong also argues that we should review the jeopardy assessment made against Hong and the seizure of the $ 193,000 in cash from the safety deposit box. Under section 7429 (as amended by the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, sec. 6237(c), 102 Stat. 3342, 3741), this Court was given jurisdiction to review certain jeopardy assessments and levies. This jurisdiction, however, is limited to assessments and levies made on or after July 1, 1989, and after the filing of a petition in this Court. Thus, the amendment to section 7429 is not applicable to *78 the seizure of the $ 193,000 which occurred in May of 1987 and provides us no authority to determine the reasonableness of such levy and assessment. Decisions will be entered under Rule 155 in docket Nos. 36506-87 and 28322-88. Decisions will be entered for petitioner in docket Nos. 36037-87 and 28321-88. Footnotes
1. 50 percent of the interest due on the portion of the underpayment due to negligence. ↩
2. 50 percent of the interest due on the portion of the underpayment due to fraud.↩
1. 50 percent of the interest due on the portion of the underpayment due to negligence. ↩
2. 50 percent of the interest due on the portion of the underpayment due to fraud.↩